237029. Good morning, Your Honors. May it please the Court. Stewart Sutherland for the Federal Public Defender's Office representing the appellant Joshua Smith in this case. The only issue that I'd like to discuss with the Court this morning would be my fifth proposition, that relating to the fact that the probative value of Vicki Bone, who is the blind expert in this case, her testimony regarding child sexual abuse in the United States, Accommodation Syndrome and delayed disclosure was inadmissible under Rule 403. As I was putting together this brief, the Court decided United States v. Parson, which under the facts of Parson, decided that the blind expert in that case was not vouching for the witness and that the testimony was helpful for the jury. And the impression among judges, I think, and trial attorneys at the district court level is that Parson has essentially resolved once and for all this issue regarding these blind sex abuse experts and irrespective of a district court judge's opinion on the issue that they will be permitted to testify in every case unless we get some further direction from the Court. For example, Ms. Bone has testified, I think, in about six of these cases fairly recently, I think post-McGirt. But you're not making a preservation argument under Parson. You're not saying Parson dictates the outcome in your case, right? I am not. In fact, I'm pointing out that Parson's was almost an inspiration towards the 403 because there was a footnote in Parson that directed litigants, I think, to consider that in certain cases that this kind of testimony might violate Rule 403. Would you agree, though, that Parson limits your argument about relevance, not the balancing, but just that the testimony is relevant, and also on vouching? Well, it's interesting that in relevancy, in the government's brief in this case, they referred to the testimony of Vicki Bone as being highly probative. And the government didn't really explore that, what they meant by highly probative. I assume what they meant by highly probative was that it was testimony that related to the credibility of the alleged victim in this case. What the court actually said, what the district court said in this case, they used some interesting language, which has been used in other cases. And that relates to the fact that the court believed, and in fact they ruled this in a motion in limine before they even heard any relevant testimony, that the testimony would have context and nuance. It would add context and nuance to the testimony. I'm not sure exactly what that means, other than I think that is a very low level of relevance. In other words, the level of relevancy isn't going to be the same in every case. I think that in Parson, there was a higher level of relevancy because there were certain issues which could be specifically addressed, I think, by an expert witness. For example, unlike the case before this court, in Parson, we had an alleged victim that recanted her testimony. And that certainly is something I think that an average juror unfamiliar with child sexual abuse disclosure would wonder, well, why would a child do that? Why would a child recant after having made the accusation? And certainly the expert witness in that case, in Parson, was free to explain that to the jury. That was something legitimate to explain. In this case, we really didn't have anything like that. The level of relevancy was very, very low. This is not a case where I think when you're talking about these kinds of witnesses, you're in essence kind of trying to explain the inexplicable, right? You know, for example, in a shooting case, maybe a gang expert might come forward and testify, well, these two people didn't know each other. There was no argument prior to the shooting. Why did the shooting occur? Well, a gang expert could explain, perhaps, things that wouldn't be known to the jury about the relationships between gangs in this area, why there might be a dispute, and thereby come to a motive, which would be helpful to the jury. We didn't have that in this case. All we had is context and nuance. And if context and nuance was enough, you know, I'm reminded of the case of United States versus Benally, which dealt with false confessions. Do you think Parson is consistent with Benally? Is consistent with Benally? I don't. Why not? I really don't. Because I think that if you're looking at, well, let me take that back. I mean, I do think that there is a certain parallel between the two cases in the recantation of testimony, because Benally was dealing with false confessions. Now, I think that the result is inconsistent, because in dealing with the false confessions in Benally, this court said that this was encroaching upon the juror's evaluation of credibility, where they didn't feel like that was true in Parson, where it does seem like those are similar issues. When you're dealing with somebody that's recanting, a juror might wonder why someone who had been sexually abused would deny that abuse, and then, you know, after having accused a person of abuse, would later recant. I think that's a far more questionable circumstance in Benally with regard to false confessions, because one would certainly wonder, a juror would certainly wonder why someone would confess to a crime that they did not commit. So, yes, I do think that there's a certain inconsistency there, even though I don't think that the issue was really all that much different. Another example would be United States versus Smith, dealing with eyewitness identification testimony. I mean, that's something that we all know jurors are very impressed with when they hear eyewitness identification testimony, and I think calling an expert to testify that, wait a minute, it's not as reliable as one would think. You know, we have the Innocence Project, where this kind of testimony, eyewitness identification testimony, has resulted in verifiable wrongful convictions more than half the time, maybe as much as 75 percent of the time. Yet, in both Smith and in Benally, the court has found that this kind of testimony improperly encroaches upon the jury's determination of credibility. But you would agree that at least Ms. Bolland's testimony about delayed disclosure was relevant. Would you agree with that? It could have been. I mean, I thought it was interesting that, I don't remember the prosecutor even asking the victim in this case why the disclosure was delayed. Had the prosecutor asked that question, it might have been an entirely legitimate, not difficult to explain justification. You know, for example, there was some evidence in the- You said why it was delayed, but wasn't there evidence about when it happened? Sure. So there was this timeline, and the prosecution might argue, well, she gives, when we say context, it's to give some explanation for the timeline. Why wouldn't that be relevant? Well, once again, I mean, perhaps relevant at a very low level in this context. Well, let me ask you this. I agree. I'm not arguing with you. You started out saying you wanted to go straight to 403, but you haven't sketched out the full framework. I mean, why should we reverse on Rule 403? Well, if we're balancing the probative value versus the prejudicial effect and confusion to the jury, which I intend to get in a little bit later, I think we have a very, very low level of relevance. Whereas in Parson, we had a relatively higher level of relevance, I think, to deal with. In this case, given the very, very low level of relevance, we have a fairly high level of prejudice, I think, resulting from this testimony. There was a case cited by the government, United States versus Big Head. And there was a dissent in that case where they listed all of the factors, all of the things that were brought up by the expert in that case in a child sexual abuse case, where there was prejudice. And I thought probably the most significant one was where the dissenter stated that above all, the testimony moved the sexual abuse of an 11-year-old from the extraordinary and unexpected, the unusual, to the normal. And that's kind of what we had in this case, because we had Vicki Bohan, who basically got up there and testified that she's conducted literally thousands of, not really investigations so much, but certainly interviews with these children. And then proceeded to just list all of these different behaviors, which are commonly associated with victims of child sexual abuse. Well, first of all, it's inappropriate, I think, in a criminal setting to make that assumption that these children that she interviewed were, in fact, sexually abused. There's nothing, there's nothing in any of the literature, there's nothing in any of the case law that allows us to distinguish between children that behave this way, for example, delayed disclosure, and have been sexually abused versus those which have not. I think one would have to look at a child that, you know, had not been sexually abused and then say, well, that person would not delay disclosure. That, in other words, delayed disclosure is somehow a factor that we associate with children who have been sexually abused, but not to children who have not been sexually abused, and maybe making these false accusations. But that leads me into probably more than prejudice, even. I felt like the testimony was confusing to the jury. Certainly, the risk of confusion was great. How do we assess that? I'm sorry? How do we assess that? How do we look at whether the testimony, what would be some data points that would help us understand your position on why it was confusing to the jury? Well, I hope I'm not being overly simplistic, but it just seemed to me that when you step back and look at what this testimony involved, overall, why was Vicki Vaughn called as a witness in this case? She was called as a witness at a bare minimum to testify as to common characteristics, common behaviors among children who have been sexually abused. Well, in the end, she had to admit that, in fact, really there aren't common behaviors because every child is different. And I think that's confusing. I mean, if you're waiting to hear, in fact, which of these behaviors that were exhibited by PE in this case would be somehow confirmation of credibility, you know, what do we have left? We have something where, well, in the end, she had to admit that all children are different. All children react differently. And therefore, there really aren't any common. And I just, that seemed very confusing to me. That if you're there to talk about common behaviors, and then in the end, you have to admit there aren't. Haven't you simply just, you know, advised the jury that, you know, in fact, some of the things that she said with regards to statistically, that, you know, a very high statistic number, statistically significant number of sexual abuse involving delayed disclosure would be by someone in the home. I mean, it's just simply highly prejudicial with a very low probative value that in the end is quite confusing, I think, for the jury. And finally, I think that the judge, there was a certain flawed analysis factor in this case. Early on, right up front, the judge made the determination under Rule 403, because that was an objection that was made in the motion in limine, that under Rule 403, that he found the degree of prejudice to be low enough, but yet deferred a decision on relevancy. So he already made the 403 determination, sort of putting the cart before the horse. He made the 403 determination before later making a relevancy determination, because he did wait to make the relevancy determination until he did hear from the alleged victim, in this case, P.E. So I think that was an abuse of discretion. And I would reserve whatever time I have left for rebuttal. Thank you. Thank you. May it please the Court. My name is Linda Epperle. I'm an Assistant U.S. Attorney representing the government in this appeal. It seems, based upon the argument today and the briefs, that we really are looking at two sort of separate things. One is whether it was proper to have this expert witness testify at all. And then a second issue of whether or not the accommodation syndrome is a proper matter for expert testimony in a child sexual abuse case. As to the first issue, we believe that the standard of review is abuse of discretion. And I don't think that there's been any showing that this judge abused his discretion. I believe the judge was thoughtful in proceeding through this and waiting to make a final determination until the time of trial, so the judge could see the evidence. And as to the accommodation syndrome, there was no objection on that basis at trial. So there was not an opportunity for a full-blown hearing into this syndrome and whether or not syndrome into this accommodation theory and whether it continued to be valid today. We believe that our brief has addressed most of these issues, but there are a few things I would like to highlight. First of all, the Big Head case that was mentioned is a Ninth Circuit case. And I believe that it is important to recognize that not only has the state of Oklahoma in Davenport back in the 1990s ruled that this testimony is relevant and helpful to a jury, but even the Ninth Circuit has ruled since 2003, I believe, that accommodation syndrome testimony based on the work of Dr. Summit is helpful to juries in child sexual assault cases. Part of the reasoning behind that is that child sexual abuse cases are not the same. They're different from all other types of cases. And unfortunately, the federal courts are beginning to hear a number of these cases. And we're going to have jurisprudence on this issue, even though it may have been lacking in the past. Ms. Everly, would the government agree that having an expert like this is enormously consequential, right? I mean, someone who testifies on the general subject of sex abuse is enormously consequential for the defendant. And so when we're evaluating the district court's decision with respect to that testimony, it has to have probative value. And it seems to me that in this case, it was very, very limited to the question of delayed disclosure. The government agree that that was truly the import of this witness's testimony? Yes, I mean, I can agree that I think that this witness testified generally about the accommodation syndrome, including some things that really didn't apply here in discussing what the syndrome is, like recantation. But the major issue here at this trial was the delayed disclosure. And why was it delayed? Why didn't she say something sooner? But isn't that precisely the problem? That if the, really, the reason the government may have thought that she was going to aid the jury, she could be helpful to the jury, was to provide, as the district court put it, context and nuance on this question. But she said a lot more than that. Why isn't that prejudicial? It outweighs that very limited, directed probative value on the issue that the government was litigating. We do not concede that the evidence regarding delayed disclosure was of limited relevance or importance. The main defense here was that this young girl disclosed, not because she had been sexually assaulted, which they denied from the beginning, but was because she was tired of getting in trouble. That this defendant was disciplining her and their analysis of the case was that in order to avoid discipline and in order to avoid, I think this is the case where there was some kind of trip she wanted to go on and now she would not be able to go, that she was mad about all that and came up with these allegations in order to get the defendant out of the house and get her away from this person who was punishing her. The importance of the testimony of the doctor here was to show that it's not unusual for children to wait. In other words, there could be other explanations why a child would wait. They would wait based upon the situation in their home life and while, again, every child's story is not the same, we agree, the courts from the 1990s forward have generally agreed that child abuse cases are different because juries, thank God, don't have a big skill set most of explaining how these factors come about. It's different than eyewitness testimony. Shouldn't her testimony have been limited just to that specific issue? Isn't the prejudicial effect here the compounding effect of general characteristic, general testimony separate and apart from the discrete testimony that may have been helpful to the jury on delayed disclosure? It would seem that the majority of her opinion has to do with those portions of the accommodation syndrome dealing with secrecy, helplessness, entrapment and accommodation and why it was delayed, conflicted or perhaps unconvincing. She was very clear with the jury that this is not a checklist. This is not a diagnostic tool. This is simply something to give the jury background and there may have been discussion about retraction or recanning. I don't think that that would make it so prejudicial that all of the previous testimony is undermined and so prejudicial a jury can't figure it out. This court determined just very recently as opposing counsel noted in the Parson decision that such testimony describing a general process of disclosure, types of disclosures and the reason why disclosures may vary depending upon internal and external factors are appropriate and commonly accepted in child sexual abuse cases. That's language from the Parsons decision. And there are multitude of cases cited I think in both of our briefs where courts I would say in the majority have determined that such testimony is helpful. Unlike the argument made in the reply brief that we should look at this as similar to eyewitness testimony experts or experts who testify about false confessions or experts who testify about the impacts of alcohol. In all of those cases this court made a point of saying these are things that are within the general experience of most people. They know what alcohol causes. They have some understanding of eyewitness testimony. The court made clear that this is something that's within the province and common sense of the jury. What makes sexual assault cases different is that the court here has said categorically it is different and that jurors need some background. But that doesn't mean that a child sex abuse expert is appropriate in every case, right? Or allowed in every case. There has to be some limitation to that. I agree that that is where the trial court has to exercise discretion about what is relevant in this case. What is reliable in this case as an expert testimony. Given the facts of this case, what portions of all of this are important? Here, again, the main defense was that she made up the whole thing to get out of punishment and in order for her, in order for there to be some explanation of why she would have waited all that time and again, generally, providing general information to the jury that things like the home life that was chaotic, the girls were more isolated after they moved to Vian. They no longer had regular contact with the family member who had kept them at one point for four months. That is who this girl eventually went to after school one day to say, you know, we can't take it anymore. All of that is important and it was important in this case and it was important in meeting the defense that she made the whole thing up. Counsel, could I just ask you a couple of questions about the district court's gatekeeping function under Rule 702 in Dauberg? As a proponent of Ms. Bohn's expert testimony, didn't the prosecution need to show the district court that Rule 702 requirements were met? Is the court asking about the accommodation syndrome? I'm asking whether a proper foundation was laid for Ms. Bohn to be allowed to testify as an expert witness. In other words, in addition to relevance, we talked a lot about relevance this morning, but did the prosecution make a showing that the testimony was reliable, that this syndrome type of evidence is evidence that can be relied upon by the jury? You know, the basic Rule 702 elements, didn't the prosecution need to show that? Didn't the district court, as the gatekeeper, need to assure itself that those requirements were met? At the time, pre-trial, at the time, there was not a specific mention about this accommodation syndrome. I think many of those factors were covered by the expert notice and those factors were covered in the discussions that happened at the trial court. In other words, secrecy, why people disclose, why they wait, how children are different. But just to interject one thing there, the pre-trial notice of intent to offer this expert witness said, I quote, testify about the process of disclosure, delayed disclosure, and the stages of disclosure for persons who've been subject to sexual abuse. That sounds a lot like what was later called child sexual abuse accommodation syndrome. Yes. And normally in the district court, well, both the prosecution and the district court need to show that this was not only relevant to help the jury understand the evidence, but also is this type of syndrome evidence has some reliability. Isn't that what Daubert was all about? I understand what the court is asking, I think. And there was not a Daubert-type hearing that took place in this case on accommodation syndrome. However, there was no specific objection to the reliability. The court, the defendant recognized that this woman was an expert. The court so found with 18 years of experience, over 4,000 interviews, 1,600 hours worth of training, and the fact that she testified as an expert in state and federal court in Oklahoma, Mississippi, and Colorado. So does that mean that the district judge doesn't need to be a gatekeeper unless there's an objection? Well, there's still a need to be a general gatekeeper. But the court here was not required to go step-by-step regarding this accommodation theory, making detailed findings as to each part of that case. Because it didn't, right? Excuse me? Didn't make, didn't go step-by-step. No, it didn't. There was not that sort of giant explanation and perhaps other experts testifying about this accommodation syndrome, whether it was still reliable, et cetera. There were not detailed findings like that because there was no objection. Let me ask you about the 403 issue one more time. Could you just walk us through the points along the way that a 403 objection was made? I mean, was it made more than once? Was it made after his bone testified maybe a little more broadly than the defense thought she should? There was not the 403 objection made as to this accommodation syndrome. And that's why we're here today, I think. If I'm not incorrect, I'm clear. We heard a lot about confusion, for example. From opposing counsel, what would you say about that? To me, I do not think that that is an accurate argument. For an expert to say, generally, again, this is not diagnostic, it's not a checklist. But generally, children who may have been abused may disclose in different ways. And here are some of the factors that may influence that. That's different than saying, but every child is different. To me, that is not confusing. That is recognizing that every child is different. And in fact, the testimony that was given as to why a person might delay disclosure talked about differences based on internal and external factors. Had the court known that that was going to be an issue, had there been an objection, the court certainly, there's no indication they wouldn't have done a full-blown Daubert hearing. And the failure to do so here was not plain error. We'd request the court affirm. Thank you, counsel. I will point out, because I pulled out a page from the order from the court, that the court kind of sidestepped its Daubert gatekeeping function by relying on another case. I mean, all the court did in its ruling, it stated that it believed that Ms. Bone may give generalized testimony about child sexual abuse, assuming its relevance under Rule 702. And the court cited the case of United States versus Rogers, which was just simply another Eastern District Court case at 2022 Westlaw 109-3648 by relying on the fact that another judge had done this, basically. Now, whether that's sufficient under 702, that will be for this court to determine. In response to the notice of intent to offer the expert witness, the defense objected on the ground of relevance, correct? Yes, and 403. Basically, all that happened during... Where was an objection based on the other 702 criteria, like reliability? There was not. There was not. There was just simply an objection, a general objection to her testifying as a witness. And yes, that's true. I would also point out that while the alcohol example was probably a good one with regard to things with when the jury's general knowledge, I don't think that that follows from the other expert opinions that I cited. That was definitely not true with regard to eyewitness identification testimony. Definitely not true with regard to false confession testimony. One thing I would say that there is a limitation, and this was imposed in the state of United States v. Hill, 749 F. 3rd, 1250, that while expert testimony can touch on the issue of credibility, and it may be appropriately in narrowly circumscribed situations, the situations they described were where it's used to explain a recognized mental or personality disorder. Some kind of a personality disorder that causes a person almost compulsively to lie. Well, I think the evidence is clear here, and the expert made it clear, that this syndrome in this case is not that sort of a thing. All the syndrome is, is a collection of descriptions of how children respond to ongoing sexual abuse and nothing more. Thank you, counsel. That concludes the argument in this case, which will be submitted. Counsel are excused.